UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHH, INC., d/b/a OOZE
WHOLESALE,

       Plaintiff,                      Case No. 19-cv-13223
                                      Honorable Nancy G. Edmunds
v.                                    Magistrate Judge Anthony P. Patti

ALL ABOUT IT, LLC,

       Defendant

and

ALL ABOUT IT, LLC,

       Third-Party Plaintiff and
       Cross Defendant,

v.

BMZ PARTNERSHIP, LLC, d/b/a
HEADY HARVEST and d/b/a AER
PREMIUM ELECTRONIC CIGARETTES,

       Third-Party Defendant
       and Cross Claimant.
_____/

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
(ECF No. 59)**

This is a trademark infringement case that began when now dismissed Plaintiff

Ashh, Inc. ("Ashh") filed suit against All About It, LLC ("All About It") for selling products

that allegedly infringed upon Ashh's intellectual property rights in violation of federal

trademark statutes and Michigan consumer protection law. (*See* ECF No. 46.) All About

It denied the allegations and Ashh and All About It have since settled their dispute.

Before the settlement, All About It filed a third-party indemnification complaint against BMZ Partnership, LLC ("BMZ") alleging that All About It innocently purchased the allegedly infringing products from BMZ. (ECF No. 13.) As such, All About It contends that BMZ should be held responsible in the event All About It is found liable to Ashh.

BMZ denies that it sold All About It the allegedly infringing products and denies that it even manufactures products of that type. (*See, e.g.*, ECF No. 59-1, PageID.785.) Because the products that were sold by All About It also appeared to display BMZ's trade name and logo, BMZ filed a crossclaim against All About It wherein it asserts claims for federal trademark infringement under 15 U.S.C. § 1114 (Count I), violation of the Lanham Act codified at 15 U.S.C. § 1125(a) (Count II), violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.* (Count III), and unjust enrichment under Michigan common law (Count IV). (ECF No. 48.)

Now before the Court is BMZ's Motion for Summary Judgment. (ECF No. 59.) BMZ moves for summary judgment in its favor on All About It's third-party complaint (ECF No. 13) as well as Counts II and III of its crossclaim against All About It (ECF No. 48). For the reasons below, the Court GRANTS BMZ's motion.

I.      **Background**

BMZ is a national distributor of cannabidiol ("CBD") edibles, oils, and cartridges used for "vaping" (*i.e.*, inhaling vapors from tobacco or other liquid cartridges produced via a small battery-powered vaporizer with a mouth-piece). BMZ sells its CBD products under its "Heady Harvest" brand in packaging that displays a gold and black circular design mark and the URL to BMZ's website. (ECF No. 59 at Ex. 3). According to declarations filed by BMZ's CEO and its sales manager, the Heady Harvest brand does

not include any vaping devices (i.e. "hardware" or "batteries"). (*Id.* at Ex. 3, 4.) This is consistent with the product catalog provided by BMZ which displays a variety of edible/inhalable CBD products and lotions offered for sale by BMZ, but no hardware. (*Id.* at Ex. 2.) BMZ also sells and distributes supplements such as Addall XR ("Addall"), a "brain-boosting supplement" that does not bear the Heady Harvest name and does not contain CBD. (ECF *Id.* at Ex. 4.) While BMZ sells some product directly to consumers, much of its product is sold through its diverse nationwide distributor network. (*Id.*)

All About It is a Michigan company that distributes both vaping hardware and consumable products. Beginning in 2018, All About It joined BMZ's distributor network and began purchasing Heady Harvest products. Shortly after the sales relationship was established, the manager of All About It, David Dabish, contacted BMZ's owner and sales representative by text message seeking vape batteries from BMZ to support BMZ's existing products. (ECF No. 65.) The text messages Dabish sent contained "mockups" or drawings of potential vaporizer battery packaging bearing the Heady Harvest label and gold and black design mark. (ECF No. 59 at Ex. 7 p. 6-7; Ex. 8.) Notably, the mockups did not include the URL to BMZ's Heady Harvest website but instead included the URL to All About It's retail store website along with the phrase "DISTRIBUTED BY ALL ABOUT IT LLC." (ECF No. 59 at Ex. 3, Ex. 7 p. 6-7; Ex. 8.) In the text accompanying the mockup designs, Dabish admitted to creating the mockups and asked the BMZ sales representative what she thought about BMZ selling batteries for its cartridges. (*Id.* at Ex. 7, p. 6.) The sales representative stated she would share the design with BMZ's owner. (*Id.*) BMZ's owner claims he did not reply to Dabish's May 20, 2018 text message and the

text message histories between Dabish and each BMZ representative make no further mention of vaporizer batteries or Dabish's mockups after that date. (*Id.* at Ex. 3, 7, 8.)

It is undisputed that at some point after the May 20, 2018 text message, All About It began selling batteries that displayed the Heady Harvest trade name in packaging that matched the mockup designs created by Dabish (the "subject batteries"). (ECF No. 59 at Ex. 1 No. 3, Ex. 11; ECF No. 65.) The battery sales caught the attention of Ashh who contacted All About It via a letter sent through counsel. (See ECF No. 46-5.) According to the allegations in Ashh's letter, the subject batteries infringed upon the design of Ashh's protected trade dress, among other things. (*Id.*) Counsel for All About It responded to Ashh via two letters indicating that All About It "had purchased de minimis samples of the [batteries] . . . [but] there was never any intention to reorder these products." (ECF No. 46-8, PageID.643.) All About It's counsel further indicated that his client would "remove that portion of their packaging" that violated Ashh's protected intellectual property. (*Id.*) Shortly after these letters were exchanged, Ashh began the present litigation by filing suit against All About It for trademark infringement and other related claims.

All About It answered Ashh's complaint on December 16, 2019 denying the substantive allegations in Ashh's complaint. (ECF No. 10.) That same day, All About It filed a third-party complaint against BMZ. (ECF No. 13.) The third-party complaint alleged All About It purchased the subject batteries, specifically 46,656 batteries, from BMZ.  (*Id.*) Accordingly, the third-party complaint asserted that BMZ should be held liable to All About It if All About It was found liable to Ashh (*Id.*)

BMZ claims that it does not and has not ever sold vaporizer batteries under the Heady Harvest trademark and that it never authorized the use of its Heady Harvest name

or design mark for use on any hardware, including batteries. (ECF No. 59 at Ex. 3, 4.) According to BMZ, the 46,656 units purchased by All About It in July of 2018 were Addall supplements, not batteries or other hardware. (*See, e.g.*, ECF No. 59 at Ex. 3.) In support of this contention, BMZ submits the July 5, 2018 invoice sent to All About It for 4 pallets of product totaling 46,656 units.[1] All About It claimed this invoice was for the subject batteries in its discovery responses, but a text message produced by BMZ shows that on November 2, 2018, Dabish referred to a photograph of the July 5 invoice as the "Addall XR Invoice." (*See* ECF No. 59-1, PageID.903-904, Ex. 20.) In addition, BMZ's sales manager explains in an affidavit how the quantity of product on the invoice and related bills of lading indicates the product was likely Addall given the way in which Addall is packaged and shipped.[2] (*See* Ex. 4.)

Given the evidence described above, BMZ now contends that summary judgment is warranted because there is no dispute that BMZ's marks were used on the subject batteries and no genuine dispute that BMZ did not supply the subject batteries to All About It. All About It argues that summary judgment should be denied because whether BMZ supplied to subject batteries to All About It is a genuine issue of material fact. BMZ

---

[1] The invoice describes the product being sold as "Natural Red e-juice" but both parties agree this description is inaccurate. (*See* ECF No. 59-1, PageID.904; ECF No. 64, PageID.957.) According to BMZ, the product was described this way as an accommodation to All About It because Addall was a new product that had not yet been approved for payment by credit card. (ECF No. 59 at Ex. 14.)

[2] The July 5, 2018 invoice is for four pallets comprised of 46,656 units of product. (ECF No. 59 at Ex. 14.) Simple math tells us there would be 11,664 units on each of these four pallets. According to BMZ's sales manager, Addall is shipped in "Master Cases" with 324 units of Addall in each Master Case and 36 Master Cases (totaling 11,664 units) in each pallet. (*Id.* at Ex. 4.) The sales manager's explanation is consistent with the Addall product specifications from which one can discern that there are 324 units in a Master Case of Addall (a unit price of $4.50 and a case price of $1,458 means there are 324 units in a Master Case). (*Id.* at Ex. 2.) Approximately one week after the July 5, 2018 invoice, bills of lading and shipping information show that four total pallets containing 36 pieces (*i.e.* Master Cases) per pallet were shipped from BMZ to All About It. (*Id.* at Ex. 16.) These 46,656 units that All About It claims were batteries and that BMZ claims were Addall were packaged in the exact same quantities that Addall is packaged. (*See* Ex. 17.)

attaches numerous exhibits to its motion to support its argument that it never shipped batteries to All About It and that the July 2018 shipment contained 46,656 units of Addall. (*See generally*, ECF No. 59 at Exs. 1-21; ECF No. 66 at Ex. 22-23.) BMZ responded to the motion and attached a single affidavit from David Dabish. (*See* ECF Nos. 64-65.)

## II.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Alexander, 576 F.3d at 558. (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). Once that occurs, the party opposing the summary judgment motion must support its position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Showing there is "some metaphysical doubt as to the

material facts" is not enough. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). There must be sufficient evidence upon which a fair-minded jury could

return a verdict for the non-moving party. *Anderson*, 477 U.S. at 252.

III.     **Analysis**

     **A. All About It's Third-Party Complaint**

All About It's third-party complaint against BMZ brings claims for breach of contract

and indemnification. These claims are premised on the assertion that BMZ supplied

46,656 subject batteries to All About It in July 2018. As discussed above, BMZ brings

forth numerous pieces of evidence to refute All About It's claim. Three affidavits from BMZ

representatives, BMZ's product catalog, text message histories from conversations

between BMZ representatives and Dabish, packaging specifications for Addall, bills of

lading and shipment information all support BMZ's contention that the July 2018 shipment

to All About It did not contain batteries—a product which BMZ denies manufacturing for

any of its customers.

In response to BMZ's motion, All About It claims it cannot be held liable because

BMZ manufactured the subject batteries according to Dabish's mockup designs. (*See*

ECF No. 65.) In support of this theory, All About It attaches a short, fifteen-statement

affidavit in which Dabish states the following:

> I mocked up some packaging and sent it to [BMZ's sales
> representative and BMZ's owner] to try to get them moving on
> providing All About It with [ ] batteries. . . . After that, the
> ultimate decision on packaging rested with BMZ, although I
> do not think they made changes to my mock up. . . . [BMZ's
> owner's] response to providing batteries was to say "get the
> moolah." . . . [BMZ's owner] later flew to Michigan to get a
> partial ($50,000.00) payment towards the batteries. . . . BMZ
> then shipped the batteries to All About It, and All About It
> proceeded to sell the batteries in its store. . . . I know of my

> own personal knowledge that BMZ sold and provided batteries to All About It, both the twist-type and the standard type for use in vaping, which displayed the phrase "Heady Harvest". . . It is my understanding that BMZ has denied ever shipping batteries to All About It, LLC in support of its Motion for Summary Judgment in connection with the above-identified case. This is untrue.

(ECF No. 65). All About It claims it does not save invoices, receipts, or bills of lading so it cannot produce those in support of its claim. (*See* ECF No. 59-1, PageID.912.) Accordingly, no other evidence whatsoever has been provided to the Court by All About It and All About It asks the Court to deny summary judgment based on a genuine question of material fact created by Dabish's affidavit alone.

The parties clearly disagree as to whether BMZ supplied the subject batteries to All About It. The question here is whether that dispute is "genuine," meaning a "reasonable jury" could return a verdict for All About It. *Anderson*, 477 U.S. at 248. All About It's affidavit meets the minimum threshold required by Rule 56. See Fed. R. Civ. P. 56(c) (requiring a party asserting that a fact is genuinely disputed to support its claim by, among other things, "citing to particular parts of materials in the record, including . . . affidavits or declarations . . . ." But, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. *Bsharah v. Eltra Corp.*, 394 F.2d 502, 503 (6th Cir.1968). And All About It "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986) (*citing First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968)).

Here, Dabish's affidavit contains only a handful of substantive statements, most of which are not detailed and all of which lack the support of traditional business

documentation such as invoices, receipts, or bills of lading. (*See* ECF No. 65.) All About

It contends the July 2018 invoice was for the subject batteries but admits no documents

have been identified to substantiate this contention. (ECF No. 59-1, PageID.904.) On the

other hand, the documentary and text message evidence provided to the Court by BMZ

all but prove the July 2018 shipment was for 46,656 units of Addall, not batteries.[3]

It is well settled that "the mere existence of a scintilla of evidence" does not entitle

a plaintiff to a trial. *Anderson*, 477 U.S. at 248. Because Dabish's unsupported affidavit is

nothing more than a scintilla of evidence, the Court finds the dispute between the parties

is resolvable on summary judgment. Dabish's affidavit is without foundation and

insufficient to show the existence of a genuine issue of material fact as to whether BMZ

supplied the subject batteries. Because the evidence provided could not lead a

reasonable jury to the conclusion that BMZ supplied the subject batteries no reasonable

jury would return a verdict in favor of All About It on its claims. The Court therefore grants

summary judgment in favor of BMZ.

**B. BMZ's Cross Complaint**

BMZ also moves for summary judgment as to liability on counts two and three of

its cross complaint against All About It. (ECF No. 59, PageID.732.) Count two alleges All

---

[3] The Court does not seek to weigh the evidence or make credibility determinations, *see Anderson*, 477 U.S. at 255 ("the judge's function is not himself to weigh the evidence . . . but to determine whether there is a genuine issue for trial"), but it is notable that the evidence provided by BMZ either directly contradicts Dabish's affidavit or, at a minimum, limits one's ability to believe All About It's arguments. As an example, Dabish's November 2, 2018 text messages refers to the July 5, 2018 invoice for 46,656 units of product as the "Addall XR Invoice." (ECF No. 59 at Ex. 20.) This directly contradicts All About It's assertion that the invoice was for 46,656 batteries. Furthermore, it is highly unbelievable that BMZ would produce or sanction the production of batteries or other hardware that display the URL to All About It's retail website and not its own. BMZ has multiple distributors nationwide and would not likely put the name or website of a single distributor on a genuine Heady Harvest product. (ECF No. 59 at Ex. 3, 4.)

About It violated the Lanham Act, 15 U.S.C. § 1125(a), by using BMZ's Heady Harvest name and design which was likely to cause consumer confusion and association with BMZ. Similarly, count three alleges BMZ violated Michigan common law regarding unfair competition and the Michigan Consumer Protection Act, Mich. Comp. Laws. § 445.901 *et seq.*, with its unauthorized use of the Heady Harvest marks. Because the applicable standard under Michigan common law and the Michigan Consumer Protection Act is the same as the tests for federal unfair competition under § 1125(a), these claims will be analyzed together. *See Goscicki v. Custom Brass & Copper Specialties, Inc.*, 229 F. Supp. 2d 743 (E.D. Mich. 2002); *Homeowners Group, Inc., v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 n. 1 (6th Cir. 1991).

BMZ has provided evidence to show the subject batteries were not genuine Heady Harvest products supplied by BMZ. (*See, e.g.*, ECF No. 59 at Ex. 3.) All About It admits to selling the subject batteries in its stores and has not provided sufficient evidence to refute BMZ's claims and show a genuine question of material fact as to whether the batteries were genuine. (*See* ECF No. 65.) Nevertheless, All About It argues that it cannot be held liable on BMZ's trademark claims because BMZ failed to establish trademark rights or "a likelihood of confusion" between the subject batteries and genuine Heady Harvest products. *See Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982) (agreeing with the district court's holding that "[a]lthough it is necessary to prove that the buying public was actually deceived in order to recover damages under § 43(a) of the Lanham Act . . . only a likelihood of confusion or deception need to be shown in order to obtain equitable relief").

In support of its first argument, All About It provides evidence that BMZ filed a trademark application for "HEADY HARVEST" on April 17, 2018 but subsequently abandoned the trademark registration process. (ECF No. 64-2, PageID.964.) This evidence is unpersuasive. BMZ admits its Heady Harvest mark is not a registered trademark. Regardless of this admission, § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a federal cause of action for infringement of marks that have not obtained federal registration.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Thus, the Court may evaluate BMZ's Lanham Act claim by making a determination as to "whether the mark is protectable, and if so, whether there is a likelihood of confusion as a result of the would-be infringer's use of the mark." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005).

### 1.  Existence of a Protectable Mark

The protectability of the unregistered Heady Harvest mark depends upon "where the mark falls along the established spectrum of distinctiveness." *DeGidio v. W. Grp. Corp.*, 355 F.3d 506, 510 (6th Cir. 2004). "Putative trademarks may either: (1) be inherently distinctive or (2) acquire distinctiveness through secondary meaning." *Id.* (citing *Two Pesos*, 505 U.S. at 769). Spanning these two basic categories are subcategories that form the spectrum of distinctiveness: (1) generic terms, which can never be trademarks; (2) descriptive terms, which are not inherently distinctive; and (3) suggestive, (4) arbitrary, and (5) fanciful terms. *Id.*

There is no dispute that BMZ markets, sells and distributes CBD products under the phrase "Heady Harvest." (*See* ECF No. 59 at Ex. 2, Ex. 3.) All About It was aware of this mark as it purchased these products from BMZ. The "Heady Harvest" phrase best fits

into the spectrum of distinctive trademarks as a "suggestive" term. This is because it "suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods." *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984). Suggestive marks are regarded as being inherently distinctive as long as the putative owner has actually used the mark. *Tumblebus*, 399 F.3d at 761. BMZ uses this mark on its CBD consumable products—products which All About It began purchasing in 2018. (ECF No. 59 at Ex. 3.) Accordingly, BMZ's Heady Harvest mark is inherently distinctive and protectable under the Lanham Act.

### 2. Likelihood of Confusion

In *Frisch's Restaurants, Inc.*, 670 F.2d at 648, the Sixth Circuit defined and explained eight factors a district court must balance when considering whether there is a likelihood that consumers would be confused regarding the origin of an allegedly infringing product. The factors the court must consider are the: (a) strength of the plaintiff's mark; (b) relatedness of the goods; (c) similarity of the marks; (d) evidence of actual confusion; (e) marketing channels used; (f) likely degree of purchaser care; (g) defendant's intent in selecting the mark; and (h) likelihood of expansion of the product lines. Not all of the factors will be relevant in every case and, in the course of applying them, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Group*, 931 F.2d at 1107.

**(a) Strength of the Mark**

"The strength of a mark is generally the result of (1) its unique nature; (2) its owner's intensive advertising efforts; and (3) which of the four categories the mark occupies: generic, descriptive, suggestive or arbitrary/fanciful." *Express Welding, Inc. v. Superior Trailers, LLC*, 700 F. Supp. 2d 789, 797-98 (E.D. Mich. 2010). "Fanciful and arbitrary marks are considered to be the 'strongest' or most distinctive marks" producing the greatest likelihood of confusion. *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir. 1987). "Suggestive" and "descriptive" marks are considered "weaker," and confusion is said to be less likely where weak marks are involved. *Id.*

In this case, although the name "Heady Harvest" is suggestive and not fanciful or arbitrary, there is evidence in the record that All About It recognized "Heady Harvest" to be both strong and unique. Dabish "personally raised the issue with BMZ of obtaining batteries that support[ed] BMZ products" and even took it upon himself to create design mockups of potential Heady Harvest-branded batteries. (ECF No. 65.) He "recognized [the] unique character," *Dino Drop, Inc. v. Chase Bar and Grill, LLC*, No. 09-cv-10759, 2011 WL 739094, at *8 (E.D. Mich. Feb. 24, 2011), of the Heady Harvest brand and sought to increase All About It's sales by offering Heady Harvest-branded batteries to complement All About It's existing product line. Accordingly, the Court finds BMZ's "Heady Harvest" mark is strong and this factor supports a likelihood of confusion.

**(b) Relatedness of the Goods**

Services and goods are related if they are "marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company."

*Homeowners Group*, 931 F.2d at 1109. With this in mind, courts have held that "[c]ases generally fit into one of three categories." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 282–83 (6th Cir. 1997). "First, if the parties compete directly by offering their goods and services, confusion is likely if the marks are sufficiently similar; second, if the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors; third, if the goods or services are totally unrelated, confusion is unlikely." *Id.* at 282. "The question is, are the [goods or services] related so that they are likely to be connected in the mind of a prospective purchaser?" *Id.* (quoting *Homeowners Group*, 931 F.2d at 1109). Accordingly, courts must examine whether the products of the parties perform the same function and concentrate on "whether consumers will be confused as to the origin of the product." *Wynn Oil Co. v. Thomas*, 839 F.2d 11183, 1187 (6th Cir. 1988) (holding that bulk car wax and complete car washing service of one party and car care products of other party offered consumers the fundamentally same thing: a clean car).

In this case, the subject batteries sold by All About It were batteries used to vaporize liquids or oils such as those contained in Heady Harvest CBD cartridges. (*See* ECF No. 59 at Ex. 2.) Because the subject batteries were related to BMZ's legitimate Heady Harvest-branded products and designed to be used in conjunction with those products, the Court finds this factor weighs strongly in favor of a likelihood of confusion.

**(c) Similarity of the Marks**

Genuine Heady Harvest-branded products display the gold and black circular logo in a specific style and color scheme. (ECF No. 59 at Ex. 2, 3.) According to BMZ, the logo depicted on the subject batteries violates the color scheme approved for use on genuine

Heady Harvest-branded products. (*Id.* at Ex. 3.) All About It does not deny this claim and offers no evidence to the contrary. Indeed, the design on the mockups created by Dabish, on the subject batteries as depicted in Ashh's complaint, and on the Heady Harvest products shown in BMZ's product catalog are more than just similar—they are exactly the same. (See ECF No. 59 at Ex. 1 No. 3, Ex. 2; ECF No. 46.) The Court therefore finds this factor weighs strongly in favor of a likelihood of confusion.

### (d) Evidence of Actual Confusion

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Daddy's Junky Music Stores*, 109 F.3d at 284 (citing *Wynn Oil*, 839 F.2d at 1188). But, "[d]ue to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant . . ." *Id.* BMZ provided no evidence of actual confusion, but the Court finds this is not significant given the timeline and facts of this case. This factor weighs in favor of neither outcome.

### (e) Marketing Channels Used

Marketing Channels Used, or "channels of trade," refers to "how and to whom the respective goods or services of the parties are sold." *Homeowners Group*, 931 F.2d at 1110. "[D]issimilarities between the predominant customers of a plaintiff's and defendant's goods or services lessens the possibility of confusion, mistake, or deception." *Id.*

In this case, the subject batteries were sold alongside legitimate Heady Harvest products and to the same customers. Consumers seeking to vaporize and inhale cartridges—including the CBD cartridges produced by BMZ— could purchase both

batteries and cartridges for this purpose. The marketing channels used between the products were therefore the same and this factor weighs in favor of confusion.

### (f) Likely Degree of Purchaser Care

The sophistication of a product's buyer and the degree of care she takes when purchasing such a product may affect the likelihood of confusion. Typically, courts assess the likelihood of confusion to the public using the standard of a buyer who exercises ordinary caution. *Homeowners Group*, 931 F.2d at 1111. But, when a buyer has more expertise or if a product is particularly expensive or unusual, the buyer can be expected to exercise greater care and the likelihood of confusion is reduced. *Id.* On the contrary, if a consumer gives less attention to the product at issue, there is a greater likelihood of confusion between marks.

As is the case with cigarette buyers, consumers of vaporizer batteries exercise a lower degree of care thus increasing the likelihood of confusion. *See Lorillard Tobacco Co. v. Van Dyke Liquor Market, Inc.*, 471 F. Supp. 2d 822, 830 ("Cigarette buyers use a low degree of care as a typical buyer is not sophisticated nor has expertise in cigarettes"). This factor favors BMZ.

### (g) All About It's Intent in Selecting the Mark

"If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Homeowners Group*, 931 F.2d at 1111. The record contains evidence that Dabish intentionally mimicked the Heady Harvest mark in the mockup designs and proceeded to sell batteries that exactly matched those designs without authorization from BMZ. (*See* ECF No. 59 at Ex. 1 No. 3, Ex. 2; Ex. 5.) Dabish admits to mocking up battery packaging "to try to get [BMZ] moving on

providing All About It with such batteries" and to profit from customers who sought hardware to support BMZ's products. (ECF No. 65.) Thus, this factor supports a likelihood of confusion.

### (h) Likelihood of Expansion of the Product Lines

BMZ states that it does market, sell or distribute any batteries or other hardware under the Heady Harvest mark. Nevertheless, as Dabish illustrated in his May 20, 2018 text messages, it would not be surprising for BMZ to one day expand into hardware to support its existing product line. Thus, this factor also favors BMZ.

In sum, all the *Frisch's* factors, including the "most important" factors—similarity and strength of the mark—support a likelihood of confusion between the subject batteries and Heady Harvest products. *See Gray v. Meijer, Inc.*, 295 F.3d 641, 646 (6th Cir. 2002). The Court therefore concludes that All About It has infringed and grants summary judgment as to liability to BMZ on Counts II and III of BMZ's crossclaim.

## IV.    Conclusion

Pursuant to L.R. 7.1(f)(2), the Court declines to hold oral argument. For the above-stated reasons, BMZ's motion for summary judgment is GRANTED with respect All About It's third-party claims and the third-party complaint is dismissed with prejudice. Summary judgment is also GRANTED AS TO LIABILITY ONLY on counts two and three of BMZ's cross complaint. The issue of damages remains.

SO ORDERED.

> s/Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated: August 5, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 5, 2021, by electronic and/or ordinary mail.

<u>s/Lisa Bartlett</u>
Case Manager